**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **AHMED SULAIMAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1685-SLP** |
| | ) | |
| **WARDEN, DIAMONDBACK DETENTION CENTER, et al.,** | ) | |
| | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Ahmed Sulaiman, a noncitizen[1] of Palestinian descent proceeding pro se, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"), challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE"). Doc. 1. Chief United States District Judge Scott L. Palk referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Respondents filed a Response. Doc. 8. On September 8, 2026, Petitioner filed two documents, Docs. 10, 11, that the undersigned construes as a Reply. On September 11, 2026, Petitioner filed a Motion to Update Removal. Doc. 14. On November 4, 2026, Petitioner filed a Motion to Expedite Habeas Petition. Doc. 18.

For the reasons set forth below, the undersigned recommends that the Court grant the Petition and order Petitioner's release from ICE custody subject to an appropriate Order

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

of Supervision ("OOS"). Adoption of this Report and Recommendation would moot Petitioner's pending motions, Docs. 14, 18.

## I. <u>Background and Procedural History</u>

Petitioner is a stateless Palestinian. Resp. at 1; Doc. 8-2 (Petitioner's I-94 Immigration Record); Doc. 8-3 at 1 (Notice to Appear). On August 19, 2023, he was admitted to the United States on a nonimmigrant B2 visa with authorization to remain in the country until February 18, 2024. Resp. at 1; Doc. 8-2; Doc. 8-3 at 1. On February 1, 2024, Petitioner filed an affirmative Application for Asylum and Withholding of Removal. Resp. at 1; Doc. 8-4 (Application for Asylum and Withholding of Removal). He did not leave the country by February 18, 2024. Resp. at 1; Doc. 8-3 at 1.

On September 17, 2025, ICE placed Petitioner into removal proceedings through the issuance of a Notice to Appear, charging him as removable under 8 U.S.C. § 1227(a)(1)(B) as a nonimmigrant who remained in the United States longer than permitted. Doc. 8-3 at 1.[2] On November 28, 2025, the Arlington (Texas) Police Department arrested Petitioner for Discharging a Firearm in Certain Municipalities, and the charge remains pending. Resp. at 1-2; Doc. 8-5 at 2 (Petitioner's Encounter Summary Narrative); Doc. 8-1 at ¶ 6 (Declaration of ICE Deportation Office Romeo Foncha). On

[2] Respondents allege Petitioner is removable under 8 U.S.C. § 1227(a)(1)(C)(i) as an alien who was admitted as a nonimmigrant and failed to maintain the nonimmigrant status. Resp. at 5. However, the Notice to Appear charges him as removable under § 1227(a)(1)(B). Doc. 8-3 at 1. Whether Petitioner is removable under § 1227(a)(1)(B) or § 1227(a)(1)(C) does not impact the undersigned's analysis.

November 29, 2025, ICE took custody of him pursuant to a warrant. Resp. at 2; Doc. 8-6 (Warrant for Arrest).

On April 2, 2026, an immigration judge ordered Petitioner removed to Palestine, or in the alternative, to Jordan. Resp. at 2; Doc. 8-8 at 1 (Order of Removal). Both parties waived their rights to appeal the removal order, making it administratively final on April 2, 2026. Resp. at 2; Doc. 8-8 at 2. On May 5, 2026, ICE Enforcement and Removal Operations ("ERO") determined Petitioner could not be removed to Palestine "per ICE ERO guidelines." Doc. 8-1 at ¶ 10; *see also* Resp. at 2. On the same day, ERO determined that travel documents and consulate approval for removal to Jordan would be necessary before removal could be effectuated. Resp. at 2; Doc. 8-1 at ¶ 10. On June 2, 2026, Dallas ICE ERO contacted ICE ERO Headquarters for guidance on removals of noncitizens like Petitioner "who cannot be removed to Palestine." Doc. 8-1 at ¶ 11. In response, ERO Headquarters "advised that removals to Palestine can proceed." *Id.* On June 18, 2026, ERO sent Petitioner the Authorization to Return to Palestinian Territories, which he completed and returned the next day. Resp. at 2; Doc. 8-1 at ¶¶ 12-13. On July 2, 2026, Respondents allege Petitioner was provided a passport from Jordan. Resp. at 2; Doc. 8-1 at ¶ 14.

On September 8, 2026, in a filing construed as a Reply, Petitioner alleges "Isr[ae]l is not issuing any travel documents for [P]alestinians to evacuate them to the [W]est [B]ank," and "few cases were issued a travel document after [] waiting more than a year." Doc. 10 at 2. He further alleges "[a lot] of [P]alestinians were granted Habeas relief since

[the Department of Homeland Security ("DHS")] was not able to remove them within [the] Zadvydas 6 months presumptive period." *Id.*

On September 10, 2026, in response to an order for a status update, Respondents state "there is no specific date for Petitioner's removal to Jordan, although Petitioner has travel documents to Jordan" and "Respondents state that they believe Petitioner's removal is significantly likely in the reasonably foreseeable future." Doc. 13 at 1.

On September 11, 2026, Petitioner filed a Motion to Update on My Removal. Doc. 14. He asserts that on "September 05, 2026, four (4) ICE agents came to the POD w[h]ere [he is] detained and informed [him] that [his] travel document request to Israel and Jordan has been denied and they are seeking third country removal, however they have never identified a name of any country." *Id.* at 1. He alleges these new developments show there is no significant likelihood of his removal in the reasonably foreseeable future. *Id.*

The Court ordered Respondents to address Petitioner's motion. Doc. 15. On September 16, 2026, Respondents timely responded, acknowledged Petitioner's assertion "contradict[s] Respondents' statement that Petitioner had travel documents to Jordan," and attached a copy of "Petitioner's passport to Jordan." Doc. 16 at 1; Doc. 16-1 (Passport). The Jordanian passport was issued in 2023 and is set to expire in 2028. Doc. 16-1 at 1. Respondents also noted "that since September 15, 2026, ERO has a pending request to Israel from ICE ERO headquarters for transit through Israel." *Id.*

In a response on October 6, 2026, Petitioner asserts the Jordanian passport submitted by Respondents "was given to them by [Petitioner] last June 2026 to help them obtain a new one to [effectuate his] removal." Doc. 17 at 1. He further alleges "it is a temporary

passport issued by The Hashemite Kingdom of Jordan and it has no national ID number, [and] it ha[s] been issued to all [P]alestinians living in the [W]est [B]ank for their easy travels between Jordan and Palestine." *Id.* According to Petitioner, he gave ICE the passport "as a reference when they submit a travel document request from the Jordanian Embassy in USA, however the travel document request was denied as per ICE agents." *Id.* According to Petitioner, when ICE agents informed him on September 5, 2026, that his travel document requests to Israel and Jordan had been denied and the "passport copy" had already been submitted to Jordan with the denied travel document request, which is why ICE is now seeking third country removal. *Id.*

On November 4, 2026, Petitioner filed a Motion to Expedite My Habeas Petition, alleging he has followed up with ICE agents "on a regular basis" about any updates on his removal, to which he has been told "there are no updates on [his] case." Doc. 18.

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 1. Neither party has provided evidence that he is no longer detained there. *See also* Doc. 18 at 1 (listing Diamondback Correctional Facility as detention location by Petitioner on motion filed on November 4, 2026).

## II. <u>Petitioner's Claims</u>

The Petition raises only one ground for relief.[3] Petitioner alleges his continued detention is unlawful because he has been "detained more than 90 days after [his] removal

---

[3] While Petitioner appears to list three claims for relief, Pet. at 6, the undersigned construes the Petition only to raise one ground for relief and the additional information to support his claim for relief.

order became final" and there is "no significant likelihood of removal in the reasonably foreseeable future." Pet. at 6. The undersigned liberally construes Petitioner to allege his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), which limits a noncitizen's detention during the post-removal period to a reasonable time. Pet. at 6. Petitioner seeks immediate release from ICE detention. *Id.* at 7.

## III. <u>Relevant Framework</u>

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

Petitioner has a final order of removal, meaning that his detention is governed by 8 U.S.C. § 1231(a). Resp. at 5. Under this statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The 90-day period is known as the "removal period." *Id.* After the removal period, ICE has discretion to detain inadmissible or criminal aliens. *Id.* § 1231(a)(6).

Detention of an alien subject to a final order of removal may not be indefinite, and the Supreme Court set the "presumptively reasonable period of detention" under § 1231(a)(6) at six months. *Zadvydas*, 533 U.S. at 701; *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating "the reasonable period of post-removal detention is presumptively six months"). "After this 6–month period, once the

alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Therefore, to obtain habeas relief, a petitioner has the initial burden (1) to show his post-removal-order detention has surpassed six months or to rebut the presumption of reasonableness if such detention is less than six months, and (2) to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701; *see also Soberanes*, 388 F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable." (citation modified)). If the petitioner meets his initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

## IV. <u>Analysis</u>

### A. Petitioner's continued detention under § 1231(a)(6) violates his Fifth Amendment Due Process rights pursuant to *Zadvydas*.

#### 1. ICE is not entitled to a presumption of reasonableness.

The Tenth Circuit has recognized three possible approaches to calculate the *Zadvydas* six-month presumptively reasonable period of detention. These three approaches focus on:

> (1) only the time spent in the most recent period of detention (the 'latest detention' approach); (2) the time spent in the most recent period of detention plus any time previously spent in detention (the 'aggregated detention' approach); and (3) the time that has elapsed since the removal period was triggered.

*Abedi v. Carter*, No. 25-3179, --- F.4th ----, 2026 WL 3149141, at *26 (10th Cir. Oct. 21, 2026) (citation modified). The Tenth Circuit held in *Abedi* that "the third approach" "is

most consistent with *Zadvydas*" and therefore "*Zadvydas*'s six-month presumption applies only to the first six months that elapse after the removal period is triggered." *Id.* The expiration of the six-month presumptively reasonable period of detention "does not instantly and automatically invalidate any immigration detention that extends longer than six months or that begins more than six months after the removal period has become final. The government is simply no longer entitled to a presumption of reasonableness for any detention that occurs outside of the initial six-month period following the removal order becoming final." *Id.* at *28 (citations omitted).

Petitioner filed the instant Petition on July 6, 2026, three months after his order of removal became final on April 2, 2026. *See* Doc. 8-8. He has now been detained for more than seven months since the removal period was triggered. As such, Petitioner has been detained beyond *Zadvydas*'s presumptively reasonable six months, and the Court "must conduct a case-specific analysis to conclude whether the detention meets the *Zadvydas* reasonableness standard absent this presumption." *Abedi*, 2026 WL 3149141, at *28.

**2. Petitioner has met his initial burden.**

Petitioner has met his initial burden under *Zadvydas* to show "there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. Notably, Petitioner is not required under *Zadvydas* to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable," *id.* at 702, only that that he has "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *id.* at 701.

Here, Petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "To meet the burden of establishing this, Petitioner must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024) (R&R), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025); *see also Khaliq v. Noem*, 828 F. Supp. 3d 1260, 1268 (W.D. Okla. 2026) (confirming Judges in this District have "looked to whether the petitioner has demonstrated institutional barriers to repatriation or obstacles particular to his removal") (citation modified). Notably, while Respondents contend Petitioner "is incorrect regarding there not being a significant likelihood of removal in the reasonably foreseeable future" and his "conclusory and speculative statements do not state facts that show he is plausibly entitled to relief under *Zadvydas*," Resp. at 6, they do not contend he has failed to meet his initial burden.

Here, Petitioner identifies several barriers and obstacles. In his Petition, he alleges "Israel is not issuing travel documents for Palestinians in order to transit them to West Bank." Pet. at 8 (citation modified). He further alleges that in "similar cases" where someone "was waiting for [a] travel document to Isreal," "it was never issued after a long waiting [period] in detention (up to 8 months)." *Id.* Accordingly, Petitioner alleges, there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* In his construed Reply, Petitioner further alleges "Isr[ae]l is not issuing any travel documents for [P]alestinians to evacuate them to the [W]est [B]ank," that "few cases were issued a travel document after [] waiting more than a year," and "[a lot] of [P]alestinians were granted

Habeas relief since DHS was not able to remove them within [the] Zadvydas 6 months presumptive period." Doc. 10 at 2. He further alleges that on September 5, 2026, ICE agents informed [him] that [his] travel document request to Israel and Jordan has been denied and they are seeking third country removal, however they have never identified a name of any country." Doc. 14 at 1.

As to removal to Jordan, in the Petition he alleges he has "filled [out a] travel document application to . . . Jordan," Pet. at 8, but now alleges his travel document requests to Israel and Jordan have been denied, Doc. 14 at 1. He further asserts that when ICE agents informed him on September 5, 2026, that his travel document requests to both Israel and Jordan had been denied, the passport provided to the Court by Respondents had already been submitted to Jordan with the travel document request that was denied, which is why ICE is now seeking third country removal. Doc. 17 at 1.

Finally, on November 4, 2026—four months after Petitioner filed his Petition and seven months after his removal period was triggered—he alleges that despite following up with ICE "on a regular basis," ICE agents continue to tell him "there are no updates on [his] case." Doc. 18.

Petitioner has sufficiently demonstrated barriers to his repatriation and obstacles to his removal. *See Shamma v. Raycraft*, No. 26-CV-492, 2026 WL 598451, at *3 (W.D. Mich. Mar. 4, 2026) (concluding a Palestinian-born petitioner met his burden to show no significant likelihood of removal because respondents had been unable to obtain travel documents for him and despite statements by respondents that "Israel will take stateless subjects and transfer to Palestine via the West Bank," without indication from the Israeli

consulate for six months that request will be approved); *Fadwa v. Lyons*, No. 25-CV-03660, 2025 WL 3525026, at *5 (D. Colo. Dec. 9, 2025) (finding petitioner met his burden to show his removal was not significantly likely in the reasonably foreseeable future because ICE had applied for travel documents from Israel more than six months ago and there was no indication that petitioner's application would be "reviewed anytime soon," ICE had failed to allege how petitioner would be escorted from Israel to Palestine during the ongoing conflict, and ICE had failed allege the Palestinian Authority had agreed to accept petitioner).

In sum, ERO's inability to remove Petitioner to Israel, and the absence of record evidence to show approved travel documents to Jordan demonstrate his removal is not significantly likely in the reasonably foreseeable future. *See Khaliq*, 828 F. Supp. 3d at 1269 (finding petitioner showed good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future where efforts to remove him to his country of citizenship had been "sporadic" and there was no definitive response from that country); *Hernandez-Perez v. U.S. Immigr. & Customs Enf't*, No. CIV-25-1081-J, 2026 WL 49710, at *1 (W.D. Okla. Jan. 7, 2026) (finding petitioner met his burden to show no significant likelihood of removal in the reasonably foreseeable future where third countries had either denied or not responded to ICE's travel document requests and there had been "no updates on the removal efforts" from ERO); *Gomez v. Mattos*, No. 25-CV-00975, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (finding petitioner met his initial burden because he "has identified a barrier preventing him from being repatriated to [his home country], has demonstrated that he is not a citizen of any other country, and that ICE has not

identified a third country that will accept him"); *Trejo v. Warden of ERO El Paso E. Mont.*, No. 25-CV-401, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025) (finding petitioner met his burden by demonstrating "that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him").

**3. Respondents have not met their burden.**

Having concluded Petitioner established "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents, though, have not met their burden.

At the outset, Respondents do not dispute Petitioner is stateless. *See* Resp. at 1 ("Petitioner Ahmed Sulaiman is a stateless Palestinian."). Respondents further allege "ICE ERO is not planning to remove Petitioner to Israel or Palestine, but to the alternate country of removal, Jordan." Resp. at 6. Respondents rely on "[t]he issuance of the Jordanian passport," "the increase in the number of Palestinians being removed to third countries in Fiscal Year 2026 from Fiscal Year 2025," "and ICE ERO making Petitioner a priority for removal" to "show[] that Petitioner's removal is significantly likely in the reasonably foreseeable future to Jordan." *Id.*

The record evidence, however, does not adequately support their claim of Petitioner's likely removal to Jordan. The undersigned is especially concerned with the absence of evidence from Respondents' failure to address Petitioner's key concerns about removal status and barriers. For example, when ordered to respond to Petitioner's motion asserting ICE agents told him his travel document requests to Israel and Jordan had been

denied, Respondents acknowledged Petitioner's assertion "contradicted Respondent's statement that Petitioner had travel document to Jordan" and attached a copy of the passport. Doc. 16 at 1. But Respondents failed to address Petitioner's central allegations—that ICE agents told him his travel document requests to Israel and Jordan had been denied despite the inclusion of his Jordanian temporary passport with the application. Respondents also puzzlingly "noted that since September 15, 2026, ERO has a pending request to Israel from ICE ERO headquarters for transit through Israel." *Id.* Respondents, though, did not (1) address Petitioner's assertion that such request to Israel had been denied or (2) harmonize their response with their prior position not "to remove Petitioner to Israel or Palestine, but to the alternate country of removal, Jordan," Resp. at 6. Doc. 16 at 1.

Nor have Respondents responded to Petitioner's claim that his passport they provided to the Court, *see* Doc. 16-1, is only a temporary passport and came from him in June 2026 "to help them to obtain a new one," Doc. 17 at 1. Officer Foncha states Petitioner "was provided a passport from Jordan" on July 2, 2026. Doc. 8-1 at ¶ 14. Is the passport at Doc. 17-1 (issued in June 2023) the same one that Officer Foncha references? And is it the same "temporary passport" Petitioner claims he provided to Respondents in June 2026 for requesting travel documents? The void of record evidence to clarify the status of Petitioner's passport and travel document request supports the undersigned's finding that Respondents have not met their burden.

Further, despite relying on Petitioner's Jordanian passport to support their assertion he is likely to be removed to Jordan, Respondents have not addressed Petitioner's assertion that his travel document request to Jordan was denied and ICE is now pursing third country

removal to an unspecified country. *Accord Sani v. Figueroa*, No. CIV-26-970-JD, 2026 WL 2533037, at *9 (W.D. Okla. Aug. 27, 2026) (R&R) (recommending release under *Zadvydas* when travel documents were denied), *adopted*, Doc. 35 (W.D. Okla. Oct. 15, 2026); *Momennia v. Bondi*, No. CV 25-1067-J, 2025 WL 3006045, at *1 (W.D. Okla. Oct. 27, 2025) (ordering release under *Zadvydas* when travel documents were denied).

Finally, Respondents' reliance on "the increase in the number of Palestinians being removed to third countries," Resp. at 6, is not sufficient to show *Petitioner's* removal is significantly likely in the reasonably foreseeable future. The fact that third countries or transit countries have recently accepted some Palestinians over the past two years, Doc. 8-1 at ¶ 15, does not alone mean Respondents have met their burden as to Petitioner (with his pending criminal charge and no clear ties to another country). *See, e.g., Khaliq*, 828 F. Supp. 3d at 1271 (finding respondents failed to meet their burden, in part, because "rebuttal evidence submitted by Respondents is scant" and "the record lacks any evidence to show that removal of aliens similarly situated to Petitioner . . . has been successful" (citation modified)); *Rajigah v. Conway*, 268 F. Supp. 2d 159, 167 (E.D.N.Y. 2003) (finding "evidence of what the [foreign] government has done in the past with respect to petitioner and with respect to other nationals sheds little light on how the [foreign] government will respond to the current situation," and finding respondent did "not provide any conclusive evidence that petitioner will be removed in the near future" (citation modified)).

Notwithstanding Petitioner's allegations that his travel document requests had been denied, Respondents provide no additional update or information about the status of the travel document requests to Israel or Jordan though more than seven months have passed

since Petitioner's removal period was triggered. Notably, "the passage of time takes on more significance as inaction and/or lack of progress in effectuating removal is precisely what *Zadvydas* guards against." *Khaliq*, 828 F. Supp. 3d at 1271. Petitioner has now had a final order of removal since April but there is no evidence ERO has recently followed up with Israel or Jordan—assuming Petitioner's requests hadn't been denied as Petitioner has alleged. With such sporadic and sparse attempts at removal over the seven months since Petitioner's order of removal, Respondents cannot rebut his showing that removal is not significantly likely in the reasonably foreseeable future.

Accordingly, Respondents fail to meet their burden showing removal to Israel, Jordan, or any other country is likely in the reasonably foreseeable future. This conclusion is consistent with court decisions recently finding the government did not show removal is likely in the reasonably foreseeable future when it presented no concrete evidence of likely removal to a petitioner's home country or any viable requests to a third country for removal. *See, e.g.*, *Khaliq*, 828 F. Supp. 3d at 1271 (granting of habeas relief by this Court after finding "prior efforts by ICE to remove" petitioner to his home country "have been sporadic and unsuccessful," and "the record lacks any evidence to show that removal of aliens similarly situated to" petitioner back to his home country "has been successful," without any evidence of considerations for third country removal (citation modified)); *see also Tadros v. Noem,* No. 25CV4108, 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) (finding petitioner had the better argument when "Respondents have not identified any country that has been willing to accept" him and "there are no travel or other documents to prepare for his departure"); *cf. Zakarneh v. U.S. Immigr. & Customs Enf't*, No. 25-cv-

00707, 2026 WL 73825, at *4 (W.D. Wash. Jan. 9, 2026) (denying relief under *Zadvydas* where "the government of Israel has approved Petitioner's removal through Israel to the West Bank so long as a flight can be arranged").

To the extent Respondents are now attempting Petitioner's removal to Palestine, this conclusion is also consistent with other recent rulings where respondents did not provide sufficient evidence that a petitioner with Palestinian ties could be returned to the West Bank through Israel in the reasonably foreseeable future. *See, e.g.*, *Shamma*, 2026 WL 598451, at *3 (concluding the "general, speculative statement" by respondents that "Israel will take stateless subjects and transfer to Palestine via the West Bank" was not sufficient to meet their burden where respondents do not indicate Israel had agreed to take action for petitioner and even assuming it had, respondents had not provided any timeline for his removal); *Fadwa*, 2025 WL 3525026, at *6 (finding respondents did not show their efforts of removal are likely to succeed where ICE followed up with Israel four times with no response, ICE has not provided details on a concrete plan to get petitioner to the West Bank through Israel, ICE does not provide any details about successfully removed Palestinians to Israel, and ICE does not claim the Palestinian Authority is willing to accept petitioner).

As such, the undersigned concludes Petitioner is entitled under *Zadvydas* to habeas relief and immediate release from custody, subject to an appropriate Order of Supervision. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." (citation modified)).

## V. Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the Petition, Doc. 1, for habeas relief under 28 U.S.C. § 2241 for Petitioner's release from ICE custody. The undersigned recommends the Court order Respondents to release Petitioner from custody immediately, subject to an appropriate Order of Supervision. The undersigned further recommends the Court order Respondents to certify compliance by filing a status report within five business days of the Court's order. Adoption of this Report and Recommendation would **MOOT** Petitioner's pending motions, Docs. 14, 18.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **November 19, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **November 24, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 12th day of November, 2026.

Chris M. Stephens

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE